# United States Court of Appeals
## For the First Circuit

No. 12-1345

UNITED STATES OF AMERICA,

Appellee,

v.

DONALD LEE PETERS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Lipez and Thompson,
Circuit Judges.

Thomas J. Trebilcock-Horan, Research and Writing Specialist,
with whom Héctor E. Guzmán-Silva, Federal Public Defender, and
Héctor L. Ramos-Vega, Assistant Federal Public Defender, were on
brief, for appellant.
Dina Avila-Jimenez, Assistant United States Attorney, with
whom Rosa Emilia Rodriguez-Velez, United States Attorney, and
Nelson Pérez-Sosa, Assistant United States Attorney, were on brief,
for appellee.

November 21, 2012

**HOWARD**, **Circuit Judge**.  Donald Lee Peters appeals a judgment of the United States District Court for the District of Puerto Rico, which sentenced him to thirty-three months' imprisonment for failing to register as a sex offender.  In calculating a range for his sentence under the sentencing guidelines, the district court included two additional criminal history points because Peters was under a criminal justice sentence when he failed to register.  Peters contends that he was not under a criminal justice sentence at that time.  We affirm.

## I. Background

To explain Peters's sentence, we first discuss the relevant portion of his criminal history.  In 2001, Peters pleaded guilty in a Wyoming court to various counts of child abuse and indecent liberties against minors and was sentenced to eight years of incarceration.  As a result, he must register as a sex offender under the Sex Offender Registration and Notification Act.  18 U.S.C. § 2250(a).  In 2004, Wyoming released Peters on parole and transferred the supervision of his parole to Virginia.  While in Virginia, Peters committed grand larceny, and in August 2006 a Virginia court sentenced him to two years of incarceration with the Virginia Department of Corrections, with one year and nine months suspended on the condition that Peters "be of good behavior for 3 years from [his] release from confinement."  In doing so, the court considered a presentence report indicating that Wyoming had revoked

Peters's parole and had issued a warrant for his further confinement. Peters was incarcerated in Virginia until November 2006. Without being released from confinement, he was then transferred to Wyoming, where he was incarcerated until November 2008. After his release from confinement in Wyoming, Peters traveled to Puerto Rico but failed to register as a sex offender there, a crime which he was alleged to have committed in February 2010 and to which he pleaded guilty.

Peters's sentence for failing to register as a sex offender was calculated in part under Section 4A1.1 of the United States Sentencing Guidelines, which provides, "Add 2 [criminal history] points if the defendant committed the instant offense while under any criminal justice sentence . . . ." The presentence investigation report prepared in advance of sentencing stated that Peters's requirement, under the Virginia sentence, of "good behavior for 3 years from [his] release from confinement" began to run when he was released from confinement in Wyoming in 2008 and ended in 2011. As a result, the report stated, Peters was under a criminal justice sentence when he failed to register in 2010. The report thus recommended that the court add two criminal history points when calculating Peters's sentence, a recommendation the government supported. At the sentencing hearing, the United States probation officer who prepared the report testified that he reached this recommendation after conferring with a Virginia district

-3-

attorney. Peters, who concedes that he was under a criminal justice sentence so long as he was subject to Virginia's requirement that he "be of good behavior for 3 years from [his] release from confinement," argued at sentencing that this period started to run when he was transferred from Virginia to Wyoming in 2006, so that he was no longer under a criminal justice sentence in 2010. The court agreed with the government and added two criminal history points, which resulted in a guideline sentence of twenty-seven to thirty-three months' imprisonment. The court sentenced Peters to thirty-three months' imprisonment. If the court had not added these two points, the guideline sentence would have been twenty-one to twenty-seven months.

## II. Analysis

We review the district court's Guidelines calculation de novo and any predicate factual findings for clear error. United States v. Thomas, 635 F.3d 13, 16 (1st Cir. 2011).

The fundamental question in this case is what the Virginia court meant when it suspended a portion of Peters's sentence on the condition that he "be of good behavior for 3 years from [his] release from confinement." Peters asserts that because the sentencing order stated that his incarceration was to be "with the Virginia Department of Corrections," the phrase "release from confinement" should be understood to mean "release from confinement

-4-

with the Virginia Department of Corrections." Peters also relies on the sentencing order's lack of references to Wyoming.

We hesitate to assume that the Virginia court meant something other than what it said: the requirement of good behavior began when Peters was released from confinement, not just from confinement in Virginia. At sentencing, the court was fully aware that Wyoming intended to confine Peters after he served his sentence in Virginia. Knowing that fact, if the court nevertheless had meant for Peters's good-behavior period to run while Peters was imprisoned in Wyoming, it easily could have said so. Therefore, we decline to adopt Peters's reading.

This is not to say that an order of the type represented by the Virginia sentencing order must be read, regardless of the circumstances, to commence the running of the supervised release period only after all conceivable consecutive confinement has been served. It became clear during oral argument that such a rule potentially could result in an unreasonably lengthy hold over a person who had long since completed the incarcerative term related to the charges for which sentence had been imposed. But the factual context of the Virginia sentencing at issue does not remotely suggest such an eventuality.

Given the circumstances attendant to the Virginia sentencing, reading the sentencing order as written serves an apparent purpose of the good-behavior requirement: to evaluate

-5-

Peters's ability to function in free society. Peters concedes that a requirement of good behavior is the functional equivalent of unsupervised probation. See Dyke v. Commonwealth, 69 S.E.2d 483 (Va. 1952). "An order granting probation is not a sentence to confinement. Indeed, it has exactly the opposite effect. A probation order stays, relieves, or prevents a person from confinement in prison." Vick v. Commonwealth, 111 S.E.2d 824, 826 (Va. 1960), superseded on other grounds by statute as recognized in Vincent v. Warden of the Dillwyn Corr. Ctr., 517 S.E.2d 17, 18-19 (Va. 1999). Peters's interpretation of the sentencing order, which would count his time in prison in Wyoming toward his good-behavior requirement, works against these principles. Moreover, Virginia's statutes "confer upon trial courts wide latitude and much discretion in matters of suspension and probation to provide a remedial tool in the rehabilitation of criminals . . .." Deal v. Commonwealth, 421 S.E.2d 897, 899 (Va. Ct. App. 1992) (alterations omitted) (citations omitted) (internal quotation marks omitted). In light of this guidance, we will not impose an unduly narrow reading of the sentencing order.

Although no Virginia law clearly addresses the question at hand, analogous cases support the conclusion that the good-behavior period did not begin until Peters was released from incarceration in Wyoming. The Virginia Supreme Court has held that when a defendant commits another crime during his probation, the

statutory time limit for the state to revoke his probation is tolled during the defendant's incarceration for the other crime. Rease v. Commonwealth, 316 S.E.2d 148, 151–52 (Va. 1984). The Court reasoned that

> [r]ehabilitation is more readily accomplished when the probationer is under the broad control of the court and the direct supervision of the court's probation officer. And when defendant, due to his own conduct, is no longer under such control and supervision, the act of grace in granting probation in the first place is rendered a nullity.

Id. at 151. The probation period itself is also tolled under these circumstances. Pierce v. Commonwealth, 633 S.E.2d 755, 759–60 (Va. Ct. App. 2006) (citing Rease). We recognize that the facts of this case differ in that Peters committed his crimes in Wyoming before he was sentenced in Virginia, and that he was not sentenced to supervised probation. But measuring Peters's good-behavior period from his release from confinement in Wyoming serves Virginia's interest in ascertaining whether Peters can behave himself as a member of free society.[1] The district court's sentencing calculation was sound.

### III. Conclusion

We **affirm** the district court's judgment.

---

[1] Because we hold that Peters's good-behavior requirement did not begin until 2008, we do not reach the government's alternative argument that the requirement began in 2006 but was tolled while Peters was incarcerated in Wyoming.